Good morning, your honors. May it please the court. My name is Martin Blumenthal. I'm representing National Power. Your honors, briefly, National Power is in the business of making rechargeable battery packs for a particular purpose. For example, for medical equipment and the like. The customer would submit their specifications. National Power would work up a prototype and send it to them to see if it worked. Your honors, the main issue here, which would actually render all the other issues moot, is that of the scienter required by the statute. The statute pretty much says that you'd have to have actual knowledge or a reasonable person using reasonable care would understand that there would be a violation. What's the answer, do you believe, this statute requires? Just looking at the plain language of the statute, was that they would have actual knowledge of the facts. Not the fact that they were packing these lithium ion batteries, but the fact that they were packaging them according to the wrong standard. Does it matter that an employee knows it but may not tell anyone else or knows what the facts are? Does that matter? The employee would know that they would get orders from somewhere that we want you to pack these prototypes and ship them to the customer. Is there any evidence in the record that Ms. Muniz received any specific training on the technical standards? What if any training had she received relating to international transport standards and regulations for hazardous materials? She's experienced, she had received training before, but apparently according to the FAA investigator, she was required to have some additional training, which the national power did provide to her. It's usually done by a private contractor and she did receive that additional training. The problem was, the way we see it, is that they were under the impression that these batteries had to be packaged under a different standard than the FAA said that they had to be shipped under. It wasn't like they just put them in an envelope and sent them off in the mail. They did what they thought was appropriate under the circumstances because even though these particular batteries happen to be a little different in physical shape and the arrangement of the cells inside the battery, as one of the officers testified, these had previously been tested because it didn't differ materially according to the statute. They were under the good faith belief that these batteries were tested according to the standards that Good Faith believed they were and shipped them according to the packaging protocol that they, in good faith, thought that these prior tested prototypes should be shipped. Is there any authority to support your assertion that an honest mistake or oversight would protect you from liability under 5123A? This is a matter of a lot of discussion in the case law. Even the agent under my cross-examination admitted that he didn't think that National Power had the intent of violating the statute. But is there any authority that we can say, here's a case, there's a case? Well, under the contract courier case that's cited in my reply brief and also mentioned in the respondent's brief, it goes into quite a discussion of what the intent is in the statutory language. Now, if the statutory language had meant that a reasonable knowledge of the facts meant knew or should have known, then it would have said knew or should have known. We can't go directly from violation to liability is the thrust of the case. If scienter is going to be defined in the statute, you can't make up your own. Well, it's imputed knowledge. It means constructive knowledge. It means you should have known. It doesn't say that. If that's what Congress had meant, that's what it would have said. So just because it was the mere whim of the agent in this case decided there was a violation, therefore, you're liable automatically. Well, you're saying you think this is strict liability as applied to you? According to the way the FAA looks at it, it is strict liability because I can't think of any instance where the reasonable circumstances for having knowledge of the facts would not lead to liability. So it may as well have been a strict liability, but the statute doesn't say it's strict liability. It's just the way the FAA is saying, well, you're liable because you should have known. Well, did this happen 11 times? If I remember correctly, there was only three customers. They were shipping prototypes to the same party, I believe, seven or eight times to make sure this battery pack fit in their equipment. And then there was, I think, two shipments to Canada. Well, does a prototype mean that they're not going to use it, or just a sample? What does that mean? Well, the engineers at the customer have to look at the battery pack and actually install it in their equipment, number one, to make sure it works. Because they want to see whatever they sent fit, not whether or not it was properly inspected? No, no. That would not be their purview. All those engineers care about is, is it going to make our equipment work correctly? They assume they've been checked out. I don't know what they assume. Engineers probably don't get involved in that sort of thing anyway. Okay, well, I don't know who's, you know, there's several people sort of involved. The one that ends up transporting it, you know, I guess, was it a her? I don't remember now. Whoever was transporting one way or another. Yeah, neither the carrier nor anyone else involved in the shipment of these prototypes noticed anything wrong. It wasn't like the carrier said, oh, get all these, this battery shorted out and burned or anything. It just was a result of an audit. The FAA came in and audited National Power's records and said, oh, you know, by the way, you know, we think you shipped these 11 shipments wrong, not according to the correct protocol. So that's how this all came about. There wasn't an accident or anything or anyone looking at a suspicious package and opening up to determine whether there was anything hazardous in there. So you're saying that so knowing in this case doesn't mean, wouldn't encompass you should have known. Right. The statute would have said that if Congress had meant that. OK, thank you. Thank you. Miss Gardner. May it please the court. My name is Casey Gardner on behalf of the FAA. This case is about whether National Power can be sanctioned for jeopardizing aviation safety for offering on 11 separate occasions, shipments containing untested lithium ion batteries for transportation on aircraft when those batteries did not comply with the safety requirements of the Department of Transportation's hazardous materials regulations. Now, given that the evidence in the record that National Power's noncompliance was inadvertent and promptly remedied, what is the specific justification for the $66,000 fine? Well, first, National Power is liable for a civil sanction here because they knowingly violated the regulations. The agency applied its own sanction guidance. You're saying knowingly and I'm saying inadvertently. Right. Well, what it means to act knowingly is defined in the statute, and it's defined as having knowledge of the facts. And here National Power did have knowledge of the facts. National Power's entire argument is that it didn't believe that it was violating the regulations, but that's not the relevant inquiry. The statute explicitly defines what it means to act knowingly, and it defines it in reference to knowledge of the facts, not knowledge of the law, meaning that a company does not need to know that it's violating a regulation. It doesn't need to act deliberately in order to be liable for a civil penalty. And that's the distinction here is that the incongruity of National Power's argument is illustrated by the structure of the statute itself, because the statute authorizes both civil and criminal penalties, with deliberate conduct giving rise to civil criminal penalties. So National Power is conflating the two standards that are in the statute. Well, are there any aggravating factors at all present that would support more than a minimal fine? There were no aggravating factors here, and that's clearly explained in the administrator's decision. The administrator's decision assessing the sanction explicitly lays out how each of the statutory factors was considered in this case. Right, but where is the evidence that Christopher Zawaris, as opposed to the FAA administrator on appeal, used the criteria in Appendix C when arriving at the $66,000 penalty? What happened here was Inspector Zawaris testified at the hearing as to each fact that was relevant of the case. So he testified as to the nature and circumstances, extent and gravity of the violation, and also factors relating to National Power as the violator here. It was these facts that are in the record that the administrator then used on appeal to assess the civil penalty. And the administrator takes each of these factors as testified to by Agent Zawaris and applies them to the agency's sanction guidance. Ultimately, it was not Agent Zawaris in this case who imposed the civil penalty, but the FAA administrator. And it's that decision that clearly explains how each of the statutory factors was taken into consideration here. For example, the agency considered the nature and circumstances of this violation, considered the nature of the material shipped. These are lithium-ion batteries, which is, under our current guidance, a minimum weight. The agency also took into consideration the culpability of National Power here, who is a sophisticated shipper who routinely offers lithium-ion batteries, who is well aware that the danger that these particular batteries pose when in transportation, and they have been in business for 35 years. These are indicia of a higher weight sanction here. So ultimately, the FAA applied each of the statutory factors here. Moreover, I should point out that the sanction here is well below statutory limits. The statute at the time of National Power's violation imposed a maximum sanction of $50,000 per violation. Here the FAA assessed $1,500 per violation. Was the rationale for this, I guess, in sending them that they were being shipped for a different purpose, only to see if they fit in a certain device, as opposed to they've got to make the thing run and everything has to be correctly checked out? I believe National Power's... You said prototypes. That's where I get a little confused. Sure. I mean, National Power is using the term prototype with reference to its customers, so I believe National Power was shipping this to a particular, I don't know, device manufacturer to see if the batteries fit in, but that's not really a concern for the FAA. The FAA's issue here is that the batteries were not tested, and every battery that is shipped in transportation must be tested to the UN criteria, and here the batteries were not tested to that criteria. Okay. So ultimately, if there are no further questions, in conclusion, the FAA's determination here that National Power's knowingly violated the regulations is not arbitrary or capricious, and the sanction is not an abuse of the agency's discretion. Thank you. Thank you. Mr. Blumenthal, how much time? Okay. Thank you. Your Honor, during the trial as mayor before the ALJ, I questioned Agent Zawaris on how the penalty was calculated.  Excuse me, counsel. Who is in charge or imbued with the responsibility to impose the penalty? Is it the ALJ investigator or is it the administrator? In this case, it was clearly the investigator. And what's the authority for that? The investigator sets the penalty? Well, it was part of my question. They can recommend it, can't they? Right, the FAA administrator is the one that has to. According to his testimony, the recommendation is, in quotes, it's pretty much, according to his testimony, whatever he feels like doing it is going to be rubber stamped. That's pretty much how it came out in my cross-examination of the agent as to how he calculated it. And it was even an objection that it was attorney-client privilege from the FAA attorney that they couldn't go into the details. It's some kind of a secret calculation they go through to come up with it, even though it's within the range. Yeah, it was in the range of what they could do, but they wouldn't give us specifics as to how they did it. There was even an objection on the record to that effect that we can't tell you. It's attorney-client privilege. But like I say, it was arbitrary and capricious. It was a mere whim on this investigator. He came up with a number and said, that's what I want to find national power. Thank you. Thanks to both parties. Thanks for sitting through this day. Okay, and the case will be under advisement. The court will be in recess until tomorrow? Until tomorrow morning.